UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| OPTIMUMPATH, LLC, ) | Civil Action No.: 4:08-cv-317-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| ) | |
| BELKIN INTERNATIONAL, INC.; ) | |
| BUFFALO TECHNOLOGY (USA), ) | |
| INC.; CISCO LINKSYS LLC; COMPEX ) | |
| INC.; D-LINK SYSTEMS, INC.; ) | |
| NETGEAR, INC.; and SMC NETWORKS ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**I.     INTRODUCTION**

This is a patent infringement case. Presently before the Court is Defendants' Motion to Transfer Venue (Document # 69). Defendants Belkin International, Inc. (Belkin), Buffalo Technology (USA), Inc. (Buffalo), Cisco Lynksys LLC (Cisco), D-Link Systems, Inc. (D-Link), Netgear, Inc. (Netgear), and SMC Networks, Inc. (SMC) seek to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Northern District of California.[1] A hearing was held January 14, 2009.

Defendant argues that the Northern District of California is the more appropriate venue because Netgear, Inc., one of the largest Defendants, is headquartered in that District and its accused activities are centered there, five of the remaining six Defendants are located in California, and the key third-party witnesses and documents are largely centered in and around Northern California. Plaintiff argues that its choice of South Carolina as the forum should be given significant weight and

---

[1] The remaining defendant, Compex Inc., does not oppose the motion.

that it has significant ties to South Carolina such that a transfer to the Northern District of California would merely shift any burden from Defendants to Plaintiff.

**II.     RELEVANT FACTS**

    **A.     Defendants' ties to Northern California**

Defendant Netgear is headquartered in the Northern District of California and has been since its founding in 1996. Gorjanc Dec. at ¶ 3. Belkin, Cisco-Linksys, Compex, D-Link, and SMC are all headquartered in California. Bettino Dec. at ¶ 3; Hassel Dec. at ¶ 3; Anderson Dec. at Ex. 2; Wang Dec. at ¶ 3; Kenney Dec. at ¶ 3. The remaining Defendant, Buffalo, is headquartered in Texas but joins in this motion and avers that Northern California is the more convenient forum to litigate this case. Inaba Dec. at ¶¶ 3-9.

The technical development of Defendants' products occurs in Northern California by Defendants and other, non-party companies. Also, Netgear and most of the other defendants manage the development of their products in Northern California and Southern California, respectively. Gorjanc Dec. at ¶ 6; Hassel Dec. at ¶ 6. Many of the technical features of Defendants' accused products reside in components called "chipsets" that are supplied to Defendants by non-party companies. Gorjanc Dec. at ¶ 7; Bettino Dec. at ¶ 7; Hassel Dec. at ¶ 7; Wang Dec. at ¶ 7; Kenney Dec. at ¶ 7; Inaba Dec. at ¶ 7. Four of the five chipset suppliers are located in Northern California, and the other supplier is located in Southern California. Id. According to Defendants, these chipset suppliers will have specific information and evidence regarding the technology at the heart of this case.

Defendants outsource the manufacturing of their products to outside design manufacturers (ODMs) headquartered in Taiwan. Gorjanc Dec. at ¶ 8; Bettino Dec. at ¶ 8; Hassel Dec. at ¶ 8;

Wang Dec. at ¶ 8; Kenney Dec. at ¶ 8; Inaba Dec. at ¶ 8. Much of the outsourcing is managed at Defendants' headquarters in and near the Northern District of California. Gorjanc Dec. at ¶ 6,8; Bettino Dec. at ¶ 5, 8; Hassel Dec. at ¶ 5, 8; Wang Dec. at ¶ 5, 8; Kenney Dec. at ¶ 5, 8. Defendants work with the engineering teams of their ODMs to create the system-level design, layout, and build of materials for Defendants' products. Gorjanc Dec. at ¶ 8; Bettino Dec. at ¶ 8; Hassel Dec. at ¶ 7; Wang Dec. at ¶ 8; Kenney Dec. at ¶ 8; Inaba Dec. at ¶ 8. Defendants assert that it is "highly likely" that the claims made by Plaintiff will involve services provided by one of these ODMs. Defendants note that travel from Taiwan is much more convenient, closer to Northern California than to South Carolina. Substantially all of Defendants' employees reside in California. Gorjanc Dec. at ¶ 6; Hassel Dec. at ¶ 6; Wang Dec. at ¶ 6; Kenney Dec. at ¶ 6.

Defendants assert that a review of the prior art cited in the prosecution history of the patent-in-suit reveals that it was largely authored by inventors living in Northern California. See Anderson Dec. at Exs. 5-13. Defendants also claim that critical prior art products were not brought to the attention of the patent office and those products come from the Silicon Valley in Northern California. See Anderson Dec. at Exs. 14-18. Defendants assert that documents and witnesses associated with these and other pieces of Northern California-based prior art will be important to this case.

    **B.**    **Plaintiff's ties to South Carolina**

Plaintiff has a physical location at 209 West Mill St. Kingstree, South Carolina. Spearman Dec. at ¶ 3. The three principles of plaintiff, Tony Spearman, John Spearman and Rusty Washburn all reside in South Carolina. Spearman Dec. at ¶ 9. Plaintiff filed the application for the '281 patent on September 13, 2000. A portion of the technology covered by the '281 patent was first presented to the public in October of 1999 in Kingstree, South Carolina. Id. at ¶ 4. The complete process was

revised, implemented and tested in South Carolina between December 2000 and December 2001. Id. It was later deployed in the South Carolina towns of Charleston, Lake City, Myrtle Beach, and Hilton Head. Id. at ¶ 5. Services covered by the '281 patent were provided to Deytons Shipyard in Charleston, Martec Biological Services of Kingstree and other smaller individual clients in South Carolina, Alabama, and Florida. Id. at ¶ 6. Plaintiff uses contract employees, all of whom are located in South Carolina. The patent prosecution attorney, Tony Alexander of Technology Legal Services, LLC resides in Charlotte, North Carolina. Id. at ¶ 8. Plaintiff expects to call Alexander as a witness. His files as well as all documents related to the conception and reductions to practice and all other business documents related to Optimum are located in South Carolina. Id. at ¶ 9.

**III.     DISCUSSION**

Defendants move for transfer of venue pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiff does not dispute that this action could have been brought in the Northern District of California and Defendants do not dispute that this Court has jurisdiction over this case. The dispute arises in whether the remaining factors–the convenience of parties and witnesses and the interests of justice–weigh in favor of Plaintiff or Defendants. The burden is on Defendants to show that a transfer is proper. Cognitronics Imaging Sys. v. Recognition Research, Inc., 83 F.Supp.2d 689,696 (E.D.Va. 2000). A transfer is not proper where it would simply shift the inconvenience from one party to another. Verizon Online Servs, Inc. v. Ralsky, 203 F.Supp.2d 601, 624 (E.D.Va. 2002); Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 841 F.Supp. 719, 721 (M.D.N.C. 1993)(internal citation omitted).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quotation marks and citation omitted).

A non-exhaustive list of factors to consider are set forth in Plant Genetic Systems, N.V. v. Ciba Seeds: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws. Plant Genetic Systems, , 933 F.Supp. 519, 527 (M.D.N.C.1996).

Based on the record and arguments presented, factors four, five, six, seven, eight, and eleven do not favor one venue over the other and are, therefore, neutral. Both venues have an interest in their citizens and the intellectual property rights of their citizens, and this action is governed by federal law; thus, factors nine and ten are neutral, as well. Resolution of this motion hinges on factors one, two and three: plaintiff's initial choice of forum, relative ease of access to sources of proof, and availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses. These factors will be discussed below.

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir.1984)(quoting Gulf Oil Corp. v.. Gilbert, 330 U.S. 501, 508 (1946); Figgie International, Inc. v. Destileria Serralles, Inc., 925 F.Supp. 411, 414 (D.S.C. 1996)). Only when the chosen forum bears little or no relationship to the causes of action is Plaintiff's choice of forum not entitled to significant weight. See Lycos, Inc. v. Tivo, Inc., 499 F.Supp.2d 685, 692 (E.D.Va 2007) (citing Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F.Supp.2d 741, 743 (E.D.Va 2003)). The relationship of Plaintiff's claims to South Carolina are sufficient to place significant weight on Plaintiff's choice of South Carolina as the forum for this matter. Anthony Spearman, one of the inventors of the '281 patent, avers that a portion of the technology covered by the patent was first presented to the public in South Carolina, the process was revised, implemented and tested in South Carolina, the first sales of the technology covered by the patent were in South Carolina, all three principals of Optimum reside in South Carolina, and OptimumPath LLC is a South Carolina Partnership with office locations in South Carolina and which does business in South Carolina. Spearman Dec. at ¶¶ 2, 4-5, 10, 12. Thus, plaintiff's choice of forum is given significant weight. Additionally, the files related to the prosecution of the patent as well as all the documents related to the conception and reduction to practice and all other business documents of the plaintiff are all located in South Carolina. Also, the patent prosecution attorney resides in Charlotte, North Carolina which is much more convenient to South Carolina.[2] Other witnesses or categories of witnesses presented by plaintiff are not specifically identified or the relevant importance of their testimony is not made clear.

The technical development of Defendants' products occurs in Northern California.

---

[2] The record does not disclose whether or not he is within this court's subpoena reach.

Defendants' documents pertinent to this case are largely located in the Northern District of California. Additionally, the prior art cited in the prosecution history of the patent-in-suit was largely authored by inventors living in Northern California. Furthermore, Defendants assert that other critical prior art products that were not brought to the attention of the Patent Office came from Northern California. Examples of these prior art products include "Apple Airport," a product of Apple, Inc., which is headquartered in California, see Anderson Dec. at Exs. 14-15, "Range2LAN," developed by Proxim Wireless Corporation, headquartered in California, see id. at Ex. 17, and "PortLAN," developed by RDC Networks, Inc., which is headquartered in California, see id. at Ex. 18. According to the Defendants, documents related to this prior art are important to this case. The ODMs used by Defendants are located in Taiwan and Defendant notes that the trip from Taiwan to California is much shorter than the trip from Taiwan to South Carolina.

By way of affidavits, Defendants list approximately 40 specific individuals as well as categories of individuals (such as "representatives of NETGEAR's engineering department") that "may be witnesses" in this litigation. Many of the purported witnesses specifically identified are employees of Defendants. However, defendants also identify employees of chipset manufacturers and ODMs, non-party witnesses, which are located within the Northern District of California, other areas of California and Taiwan. Plaintiff concedes that these witnesses would be material to this case. Hearing Trans.[3] at 25. Many of the these purported witnesses are located within the subpoena reach of the Northern District of California and many are not. However, it is clear that obtaining these witnesses' attendance at trial would be significantly less burdensome and costly and more likely in the Northern District of California as compared to South Carolina. In fact, the plaintiff will likely use some of these

---

[3] "Hearing Trans." refers to the transcript of the hearing held January 14, 2009.

witnesses in its effort to prove infringement.

Plaintiff will initially have the burden in this case to show infringement of its patent. Based on the record presented, that evidence primarily is located in California, including within the Northern District of California and Taiwan. Defendants have raised several defenses to the validity and enforceability of the patent. Defendant asserts, without rebuttal, that much of this evidence, including documents and witnesses, is located in California and primarily in Northern California.

While mutual inconvenience of the parties[4] is not justification for disturbing plaintiff's choice of venue, where the focus of the evidence relating to infringement, most of the non-party witnesses, and a significantly larger number of party witnesses are located much more convenient to one venue over the other, transfer is appropriate. At this stage of this litigation, it is not glaringly clear precisely which witnesses will be key. However, plaintiff does not dispute that at least some of the witnesses and categories of witnesses and evidence identified by defendants will be key in this action. It will be equally burdensome to the parties to litigate this action in the others' choice of forum, except because of the numerosity differential it appears that defendants would carry a heavier burden if the action remains in South Carolina. However, most, if not all, of the evidence to be obtained from non-parties is located in California, including within the District of Northern California, other areas of California, Taiwan and likely in Texas to some degree. The choices of venues are located on opposite sides of the continental United States. The record does not disclose whether or not any of these non-party witnesses will be unwilling to appear for trial. However, the convenience to California as compared to South Carolina for those willing to appear is quite significant. Additionally, generally in patent infringement actions, "the preferred form is that which is the center of the accused activity . . .the

---

[4] Defendants have agreed to depose plaintiff's principles and the patent prosecution attorney in South Carolina.

trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." <u>GTE Wireless, Inc. v. Qualcomm, Inc.</u>, 71 F.Supp.2d 517, 519 (E.D.Va.1999). Based on the record presented, the §1404 factors strongly favor venue of this case in the Northern District of California.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue (Document # 69) is **GRANTED** and this case is transferred to the Northern District of California.

**IT IS SO ORDERED.**


March 30, 2009                                          s/Thomas E. Rogers, III
Florence, South Carolina                             Thomas E. Rogers, III
                                                              United States Magistrate Judge